# Federal Defenders
## OF NEW YORK, INC.

One Pierrepont Plaza-16th Floor, Brooklyn, NY 11201
Tel: (718) 330-1200 Fax: (718) 855-0760

David E. Patton
*Executive Director and Attorney-in-Chief*

Deirdre D. von Dornum
*Attorney-in-Charge*

August 5, 2021

**By ECF**
Kiyo A. Matsumoto
United States District Judge
United States District Court
225 Cadman Plaza East
Brooklyn New York 11201

      Re:    United States v. Ernesto Jones
                  18-CR-376 (KAM)

Dear Judge Matsumoto:

      I write on behalf of my client, Ernesto Jones, in anticipation of his sentencing. Mr. Jones has pled guilty, pursuant to a plea agreement, to Count Two of a two-count indictment, which charges him with Distribution and Possession of a Fentanyl Derivative with Intent to Distribute, in violation of 18 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). .

      Although the statutory sentence range for this offense is 0 to 20 years' imprisonment, the advisory Guidelines range is only 12 to 18 months, based on a total offense level of 13 and criminal history category of I. *See* Addendum to Presentence Report dated Dec. 15, 2020 ("PSR Addendum") ¶¶ 16, 24, 60.[1] Because the applicable guideline range is in Zone C of the Sentencing Table, the minimum term within the Guidelines may be satisfied by 6 months of imprisonment followed by a term of supervised release with a special condition of 6 months community confinement or home detention in place of imprisonment. U.S.S.G. § 5C1.1(d)(2). For the reasons set forth below, we ask the Court to sentence Mr. Jones to a term of probation of one year, or in the alternative, time served followed by three years' supervised release.

      The "overarching' statutory directive to sentencing courts is the so-called "parsimony command," instructing district courts to "impose a sentence sufficient, but not greater than

---

[1]The government concurs with this Guidelines calculation, based on the application of Guideline 2D1.1(b)(17), which it had overlooked in its sentencing submission. *See* ECF No. 35 at 1, 2.

1

necessary to accomplish the goals of sentencing...." *Kimbrough v. United States*, 552 U.S. 85, 101 (2007) (quoting 18 U.S.C. § 3553(a)). To fulfill that mandate, the sentencing court must first "'consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and punishment to ensue,'" and then impose the lowest sentence sufficient to achieve those sentencing goals. *Gall v. United States*, 552 356, U.S. 38, 53 (2007) (quoting *Koon v. United States*, 518 U.S. 81, 113 (1996)).

The purposes of sentencing include providing just punishment for the offense, affording adequate deterrence to criminal conduct, protecting the public from further crimes of the defendant, and providing the defendant with the necessary training, care and other treatment in the most effective manner. 18 U.S.C. § 3553(a)(2).

In determining the sentence to be imposed, the Court must consider, among other things, the nature and circumstances of the offense, the history and characteristics of the offender, the sentencing range established in the advisory Sentencing Guidelines, and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. § 3553(a)(1), (a)(3)-(7).

With respect to the nature and circumstances of the offense, selling a substance containing fentanyl is admittedly a serious crime, since as the government notes, it involves the "distribution of dangerous narcotics in New York City." ECF No. 35 at 2. On the other hand, and as the government notes as a counterbalance, "while he knew the pills contained narcotics, [] he was unaware that the pills he sold contained fentanyl." *Id.*; *see also* PSR ¶ 6 ("It is unknown whether the defendant was aware the oxycodone contained fentanyl.") As the government implicitly recognizes, Mr. Jones' lack of knowledge the pills contained fentanyl mitigates the severity of the offense in this particular instance.

Further mitigating the seriousness of the offense, Mr. Jones engaged in this conduct only two times, three weeks apart in March 2018, and both times at the instigation of an acquaintance who lured him into selling drugs in her role as a confidential informant ("CI") facing criminal charges and seeking benefits from various branches of law enforcement. *See* PSR ¶¶ 7, 8; ECF No. 1, Affidavit and Complaint in Support of Application for Arrest Warrant. ¶ 3 n. 2. This CI had been working for and getting paid by the FBI and was seeking both "prosecutorial consideration by the Nassau County District Attorney's Office, where [she] currently has a case pending[,]" and "consideration in connection with a naturalization application." ECF No. 1, ¶ 3 n. 2. The CI had a criminal record [*id.*]; Mr. Jones did not, until he took her calls and agreed to secure her the oxycodone she requested. *See* PSR ¶¶ 26, 27.

Thus, while the government commendably notes as another mitigating factor "the defendant's limited criminal history" [ECF No. 35 at 2], Mr. Jones, in point of fact, has *no* criminal history: His only prior brushes with the law resulted in a Youthful Offender Adjudication, which is not a conviction [*see United States v. Parnell*, 524 F.3d 166, 169-70 (2d Cir. 2008)], and a

conviction of Disorderly Conduct, a non-criminal offense. *See* N.Y. P.L. § 240.20  Both occurred when Mr. Jones was only 18 years old; he is now 33.  *See* PSR ¶¶ 26, 27.  And neither involved a drug offense, further indicating that the conduct he engaged in here was aberrational.

While Mr. Jones' lack of a criminal history militates toward leniency, so too does the rest of his history and characteristics. Mr. Jones is the father of 7-year-old autistic son, and by all accounts a very good one.  The child's mother, Breanna Williams, confirmed that Mr. Jones provides voluntary child support of $400 a month, sees his son every day, and stays with him every other weekend.  She described Mr. Jones to the Probation Department as a "'great dad'" and "'[her] best friend' 'and "emphasized [his] helpful nature and added that when she is called into work on the weekends, she can always count on [him], even if it is last-minute." PSR ¶ 39. Similarly, Mr. Jones' mother, Asuncion Rivera-Jones, has told defense counsel that Mr. Jones and his son have a special relationship and noted that the son cries a lot whenever he has to part with Mr. Jones.  Ms. Jones disclosed to counsel that Ernesto himself was diagnosed with a learning disability at a young age and was in special education classes as a child, and she believes that this has made him more able to relate to his autistic son and contributed to the special bond that has developed between them.  She noted in a similar vein that the 7-year-old son of Mr. Jones's fiancé Courtnay has also developed a strong bond with him and "loves EJ to death."

Mr. Jones's father, Eduardo Jones, describes Mr. Jones as "an honest, respectful person and a good son" [PSR ¶ 37], and his mother, Ms. Rivera-Jones, reports that she is always being told that "Ernesto is so well-mannered."  Both have "noticed a positive turnaround since the defendant's arrest" in June 2018.  *Id.*  Eduardo Jones states that "since he made that mistake he is a different person and more responsible[,]" going to work every day at the Royal Farms horse stable and returning straight home to take care of his son and his fiancé. Ex. A, Letter from Eduardo Jones.[2] Ms. Rivera-Jones likewise tells counsel Mr. Jones has "done a 360" since his arrest, that he has "changed a lot" and stopped using marijuana and Xanax, and is preparing to earn a welding license to pursue his goal of becoming an automobile mechanic.  While she, too, sees the arrest as a wake-up call, Ms. Rivera-Jones also attributes the change to the steadying influence of her son's fiancé, Courtnay, noting that he has changed even more after they got engaged during the pandemic. *See* Ex. B, Letter from Asuncion Rivera-Jones; Ex. C, Letter of Jose F. Ortiz.

Consistent with what both of his parents have observed, Mr. Jones hasn't had a single hiccup, drug-related or otherwise, since his release on bond over three years ago. His supervising Pretrial Services officer has "advised that [Mr. Jones] has complied with all Court-ordered conditions of release" and the PSR states, after noting that he was smoking two to three "blunts" per day and also using Xanax, that "[i]t is noted that after his initial positive urinalysis test when released on bail, all subsequent tests have been negative." PSR ¶ 45.

---

[2]Due to formatting issues, Eduardo Jones's letter is not attached to this submission but will shortly be provided under separate cover.

3

In light of the nature and circumstances of this brief foray into criminal activity, Mr. Jones's lack of criminal history preceding this arrest, and his sterling progress and compliance on Pretrial supervision in the more than three years that have followed it, it is clear he poses no appreciable risk of recidivism. As both his parents have noticed, getting arrested and prosecuted for this federal drug offense has jolted Mr. Jones and will keep him on a straight and narrow path for the foreseeable future.  Hence, sending him to state prison isn't necessary to protect the public from further crimes.

For much the same reason, incarcerating this 31-year-old first offender isn't necessary to achieve just punishment either. For Mr. Jones being prosecuted in federal court has been a horrific ordeal.  He has been under Pretrial supervision for over three years, and will have to endure additional supervision by the Probation Department no matter what sentence the Court decides to impose.  *See* PSR ¶¶ 61, 63.  And by virtue of this case he will now have a felony conviction, a significant punishment for somebody with no prior criminal record.

Finally, a sentence of custody would not only fail to serve but would undermine the goal of "providing the defendant with the necessary training, care and other treatment in the most effective manner." 18 U.S.C. § 3553(a)(2). Mr. Jones has been doing tremendously well for over three years since his arrest, employed full time at the stable, preparing to get a welding license in pursuit of his goal of becoming an auto mechanic, and on the verge of getting married to the woman who helped him accomplish this impressive turnaround.  Incarcerating this first offender at this pivotal juncture would needlessly halt this progress and cause severe harm to his 7-year-old autistic son without advancing any of the statutory purposes of sentencing.

For the reasons set forth above, and in light of the over three years Mr. Jones has successfully completed on Pretrial supervision, we ask the Court to impose a sentence of one year probation, or in the alternative a sentence of time served followed by three years of supervised release.

                                                Respectfully Submitted,

                                                /s/
                                                Kannan Sundaram
                                                Assistant Federal Defender

cc:    David J. Lizmi
         Assistant U.S. Attorney

         Michelle B. Malko
         U.S. Probation Officer